UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
LUIS PEREZ, individually and on behalf of
all others similarly situated,

                               MEMORANDUM
                Plaintiff,             AND ORDER

      -against-                       13 CV 2109 (RML)

METRO DAIRY CORP., *et al.*,

                Defendants.
---------------------------------------------------------X

LEVY, United States Magistrate Judge:

        This case is before me on consent of the parties.  (See Consent to Jurisdiction by

U.S. Magistrate Judge, filed Mar. 17, 2014.)  Plaintiffs commenced this action in April 2013,

seeking unpaid wages and overtime, plus liquidated damages, interest, attorney's fees, and costs

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  (See Complaint, dated

Apr. 5, 2013.)  On June 18, 2013, the parties agreed, by so-ordered stipulation, to conditional

collective certification.  As of November 19, 2014, discovery is complete.  There are eleven opt-

in plaintiffs, and the opt-in period has closed.

        Defendants now move to decertify the conditionally certified collective action on

the ground that the named plaintiff, Luis Perez, is not similarly situated to the opt-in plaintiffs.  I

heard oral argument on March 5, 2015.  (See Transcript of Oral Argument, dated Mar. 5, 2015

("Tr.").)  The parties were directed to file any supplemental submissions by March 13, 2015;

only plaintiff did so.  (See Supplemental Affirmation of Odalis M. Encarnacion, Esq., dated Mar.

13, 2015.)

        Although the FLSA does not define the term "similarly situated," courts require

that there be a "factual nexus between the claims of the named plaintiff and those who have

chosen to opt-in to the action."  Davis v. Lenox Hill Hosp., No. 03 CV 3746, 2004 WL 1926086,

at *7 (S.D.N.Y. Aug. 31, 2004) (internal quotation marks omitted).  The relevant issue is not

whether the named plaintiff and the opt-in plaintiffs are identical in all respects, but whether they

all allegedly were subject to a common employment policy that violated the FLSA.  Ayers v.

SGS Control Servs., Inc., No. 03 CV 9078, 2007 WL 646326, at *4 (S.D.N.Y. Feb. 27, 2007)

(citing Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996)); Hoffmann v. Sbarro, Inc.,

982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, D.J.).

At the conditional certification stage, the named plaintiff need only make a

"modest factual showing" that he or she "and the potential plaintiffs were victims of a common

policy or plan violating FLSA."  Chowdhury v. Duane Reade, Inc., No. 06 CV 2295, 2007 WL

2873929, at *2 (S.D.N.Y. Oct. 2, 2007).  However, once discovery is complete and the court is

afforded a fuller record, the plaintiff is subject to a more "stringent standard" of proof in

demonstrating that all of the plaintiffs are similarly situated for the purposes of the FLSA.

Damassia v. Duane Reade, Inc., No. 04 CV 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5,

2006); see also Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010) ("At the second stage, the

district court will, on a fuller record, determine whether a so-called 'collective action' may go

forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to

the named plaintiffs.").

In determining whether members of a collective action are similarly situated,

courts typically look to the "(1) disparate factual and employment settings of the individual

plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff;

-2-

and (3) fairness and procedural considerations counseling for or against [collective action

treatment]."  Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008)

(citations omitted).  The burden is on the named plaintiff to prove that the other employees are

similarly situated.  Ayers, 2007 WL 646326, at *4.  If the plaintiffs are similarly situated, the

collective action proceeds to trial; if they are not, "the class is decertified, the claims of the opt-in

plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her

own claims."  Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

Defendants Metro Dairy Corp. and Raz Dairy Inc. are integrated companies

engaged in the business of distributing dairy products to customers for resale.  The court's order

conditionally certifying a collective action authorized notice to the following persons:

> All individuals who worked as milk truck drivers, assistant milk
> truck drivers, milk truck mechanics, milk handlers or in any other
> similar milk delivery related jobs for Metro Dairy Corp. or Raz
> Dairy Inc. located in Yonkers, New York from April 10, 2007 to
> the present.

(Stipulation and Order, annexed as Ex. B to the Affirmation of Gary Schoer, Esq., dated Jan. 9,

2015 ("Schoer Aff.").)  According to defendants, Perez was an exempt supervisory employee

who had a different work schedule and received greater benefits than the opt-in plaintiffs, all of

whom were milk truck drivers or assistant milk truck drivers.  (Memorandum in Support of the

Motion of Defendants to Decertify the Collective Action, dated Jan. 9, 2015 ("Defs.' Mem.").)

Plaintiffs object to this characterization, arguing that Perez was a non-exempt employee who

worked in various capacities related to milk delivery, and that defendants had a "common plan

and scheme . . . to deprive the Plaintiffs of their overtime wages."  (Affirmation of Odalis M.

Encarnacion, Esq., dated Feb. 6, 2015.)

With respect to overtime wages, the FLSA states in relevant part:

> [N]o employer shall employ any of his employees who in any
> workweek is engaged in commerce or in the production of goods
> for commerce, or is employed in an enterprise engaged in
> commerce or in the production of goods for commerce, for a
> workweek longer than forty hours unless such employee receives
> compensation for his employment in excess of the hours above
> specified at a rate not less than one and one-half times the regular
> rate at which he is employed.

29 U.S.C. § 207(a)(1). Employees who work in a "bona fide executive . . . capacity" are exempt

from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). Employees are classified as

"executive" if:

> they are "[c]ompensated on a salary basis"; 2) their "primary duty
> is management of the enterprise . . . or of a customarily recognized
> department or subdivision thereof"; 3) they "customarily and
> regularly direct[ ] the work of two or more other employees"; and
> 4) they "ha[ve] the authority to hire or fire other employees or" if
> their "suggestions and recommendations" on personnel decisions
> "are given particular weight."

Myers, 624 F.3d at 548 (citing 29 C.F.R. § 541.100(a)(1)-(4)).[1] "[T]hese questions should be

---

[1] The FLSA does not define the term "bona fide executive" and instead directs the
Secretary of Labor to do so by regulation. Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554,
559 (2d Cir. 2012) (citing 29 U.S.C. § 213(a)(1)). Regulations issued by the Department of Labor
provide that the exempt or nonexempt status of an employee cannot be assessed from an
employee's job title alone, but must be determined on the basis of whether the employee's salary
and duties meet the requirements of the regulations. 29 C.F.R. § 541.2. The Department of
Labor has defined an "employee employed in a bona fide executive capacity" as an employee:

> (1) Compensated on a salary basis at a rate of not less than $455
> per week . . . ;
> (2) Whose primary duty is management of the enterprise in which
> the employee is employed or of a customarily recognized
> department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more
> other employees; and

(continued...)

resolved by examining the employees' actual job characteristics and duties." Id.  To determine

whether an employee's "primary duty" is management (id. (citing 29 C.F.R. § 541.100(a)(2)), a

court must analyze "'all the facts in a particular case,' looking to the 'principal, main, major or

most important duty that the employee performs,'" id. (citing 29 C.F.R. § 541.700(a) (defining

"primary duty")).

        Here, the record shows that Perez worked for defendants from approximately

March 2000 to February 2012, in various capacities.  He stated that he started as an "assistant" to

the truck drivers, but over the years he also trained new drivers on how to work their milk routes,

brought mechanics to trucks that had broken down on the road, loaded and unloaded milk from

trucks, delivered milk, and worked as a milk handler.  (See Deposition of Luis Perez, dated June

16, 2014, annexed to the Schoer Aff. as Ex. D ("Perez Dep."), at 11-16; Affidavit of Luis Perez,

sworn to Mar. 8, 2012 ("Perez Aff."), annexed as Ex. A to the Reply Affirmation of Gary Schoer,

Esq., dated Feb. 19, 2015, ¶ 1.)  He has stated that he worked six days per week from

approximately 3:00 a.m. to 7:00 p.m. and was paid approximately $650 per week.  (Declaration

of Luis Perez, sworn to April 19, 2013 ("Perez Decl."), ¶¶ 4-5.)  Both sides agree that Perez was

paid on a salaried, rather than an hourly, basis.[2]  On the other hand, it also appears undisputed

---

[1](...continued)
> (4) Who has the authority to hire or fire other employees or whose
> suggestions and recommendations as to the hiring, firing,
> advancement, promotion or any other change of status of other
> employees are given particular weight.

29 C.F.R. § 541.100(a).

[2]  Compensation is earned on a "salary basis" if "the employee regularly receives each pay
period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the
(continued...)

that Perez did not have authority to hire or fire staff.

Plaintiffs contend that Perez spent the majority of his time performing non-managerial tasks such as purchasing merchandise or parts for trucks, training new drivers on how to navigate their routes, and loading and unloading milk. (See Perez Decl. ¶ 3; Perez Dep. at 19-20.)  In addition, when trucks broke down on the road, which often happened in the early morning hours, Perez would travel in his own car to bring a mechanic to the scene, and then submit receipts to the company to be reimbursed for fuel and tolls. (Perez Dep. at 23.)[3] However, he also has stated that he performed the duties of a "sales representative," which involved visiting convenience stores and encouraging them to carry defendants' products. (Perez Aff. ¶ 1.)[4]

At oral argument, defendants' counsel stated: "I never argued that he [Perez] was management.  I argued that he was supervisory." (Tr. at 12.)  Counsel further explained:

> He supervised, in a sense, those mechanics because if a truck broke down the drivers would call him.  He would then contact the mechanics, he would pick the mechanics up, he would drive the mechanics to the vehicle.  He supervised the drivers when he rode with them, teaching them the routes, teaching them the procedures.
> . . .

---

[2](...continued)
employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602.

[3]  Perez also testified that, on occasion, he was reimbursed for auto insurance and for his personal cell phone bill. (Perez Dep. at 21-22, 26, 29.)

[4]  Perez signed this affidavit in connection with a matter before the National Labor Relations Board.  In the affidavit, Perez also identified three employees as "sales representatives." (Perez Aff. ¶¶ 2, 5.)  In his deposition in this case, Perez denied that he was involved in sales. (Perez Dep. at 23-24, 40-41.)

(Tr. at 13.)  This is a far cry from evidence that Perez's "primary duty" was management, or that supervising other employees was the "principal, main, major or most important duty" that Perez performed.  As Perez explained in his deposition, he did "everything there, whatever came up" to ensure that drivers could complete their deliveries.  (Perez Dep. at 24.)

Nor is there sufficient evidence that Perez was exempt under the FLSA's  "outside salesperson" or "administrative employee" exemptions, as opposed to being a non-exempt "salesperson."  See Gorey v. Manheim Servs. Corp., 788 F. Supp. 2d 200, 208 (S.D.N.Y. 2011); see also 29 C.F.R. § 541.500 (defining an exempt "outside salesperson" as one who is "customarily and regularly engaged away from the employer's place or places of business" in performing his or her primary duty of making sales); 29 C.F.R. § 541.201 ("To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers."  Such work includes "quality control[,] . . . advertising[,] marketing[,] research [,] . . . personnel management . . . and similar activities.").

In Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105–08 (2d Cir. 2010), the Second Circuit explained the distinction between a salesperson and an administrative employee:

> [A]n employee making specific sales to individual customers is a
> salesperson for the purposes of the FLSA, while an employee
> encouraging an increase in sales generally among all customers is
> an administrative employee for the purposes of the FLSA.
> Consider a clothing store. The individual who assists customers in
> finding their size of clothing or who completes the transaction at
> the cash register is a salesperson under the FLSA, while the
> individual who designs advertisements for the store or decides
> when to reduce prices to attract customers is an administrative

employee for the purposes of the FLSA.

Id. at 108.  Thus, even if it were Perez's primary duty to promote sales to individual customers (which there is little evidence to suggest), defendants have made no showing that he was involved in promoting sales generally or was responsible for the administrative operations of defendants' business.  See Gorey, 788 F. Supp. 2d at 208-09 (explaining that the "sales promoter" and administrative employee exemptions are "narrow exceptions to the general rule that employees are entitled to overtime pay that are narrowly construed.").  See also Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960) (alleged exemptions are narrowly construed against the employer).

In sum, I find that Perez and the opt-in plaintiffs were similarly situated and that deciding plaintiffs' claims collectively would serve the interest of judicial economy.  Defendants' motion to decertify the collective action is therefore denied.

SO ORDERED.

Dated: Brooklyn, New York
       April 6, 2015

        /s/        

ROBERT M. LEVY
United States Magistrate Judge
