UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
LUIS PEREZ, individually and on behalf of
all others similarly situated,

                           Plaintiff,

    -against-

METRO DAIRY CORP., et al.,

                           Defendants.
---------------------------------------------------------X

MEMORANDUM
AND ORDER

13 CV 2109 (RML)

LEVY, United States Magistrate Judge:

       This case is before me on consent of the parties. (See Consent to Jurisdiction by U.S. Magistrate Judge, filed Mar. 17, 2014.) Plaintiffs commenced this collective action in April 2013, seeking unpaid wages and overtime, plus liquidated damages, interest, attorney's fees, and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. (See Complaint, dated Apr. 5, 2013.)

       Plaintiffs now move pursuant to FED. R. CIV. P. 37 for spoliation sanctions and other relief based on defendants' failure to produce employment documents and records, specifically payroll records, W-2s, check stubs, and cashier sheets for plaintiffs. (See Memorandum of Law in Support of Plaintiffs' Motion in Limine, dated Jan. 9, 2015 ("Pls.' Mem.").) They seek an order:

> (1) striking defendants' answer, affirmative defenses, and counterclaim in their entirety;
> (2) directing that it is conclusively established as a fact for this action, and admitted into the record, that all plaintiffs are truck drivers, assistant truck drivers or loaders, that all plaintiffs worked 96 hours per week, and that all plaintiffs worked, were underpaid, and sustained damages as set forth in Exhibit 3, Plaintiffs' Damages Summary;

> (3) prohibiting and precluding defendants from proffering any evidence as to plaintiffs' job titles, job duties, salary, wages, benefits, start-date of employment, end-date of employment, hours worked, days worked, weeks worked, years worked, payments made, methods of payments, and benefits paid (other than the minimal information provided as to plaintiffs Pablo Gonzalez and Pedro Veloz for 2008-2010);
> (4) giving binding instructions to the jury that it must draw an inference adverse to the defendants, for the absence of the evidence;
> (5) giving binding instructions to the jury to make an inference to presume that the lost evidence is both relevant and favorable to plaintiffs;
> (6) granting plaintiff attorney's fees in the amount of $2,500.

(Id. at 14-15.)  Defendants object on the ground that all of their books, records and computers were seized pursuant to an order of the Superior Court of New Jersey, in Farmland Dairies, LLC v. Raz Dairy, Inc.  (See Order of the Honorable Robert P. Contillo, effective August 27, 2013, annexed as Ex. B to the Affirmation of Gary Schoer, Esq., dated Feb. 5, 2015 ("Schoer Aff.").)  That case, in which defendants' milk supplier, Farmland Dairies LLC ("Farmland"), sued to enforce a security agreement, resulted in a judgment of $10,658,769.11 against defendant Raz Dairy, Inc. and $60,723.66 against defendant Edward Zastenik on June 3, 2014.  (Schoer Aff. ¶ 3B.)

Defendants' documents and computers remain in the possession of Farmland.  Defendants' counsel contacted Farmland's counsel and received a flash drive containing approximately three hundred pages of defendants' Quickbook payroll records, which was given to plaintiffs in discovery.  (Id. ¶ 3C; Transcript of Oral Argument, dated Mar. 5, 2015 ("Tr."), at 28.)  In addition, plaintiffs' counsel subpoenaed the records from Farmland and conducted an inspection of the records in Farmland's possession on August 22, 2014.  (Id. ¶ F.)  To the extent

that some records no longer exist or cannot be located, defendants argue that they had no control over the records and were not complicit in their loss or destruction. (Id.)

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). Sanctions against a party who spoliates evidence may be imposed pursuant to Rule 37(b) as well as through the court's inherent powers. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106–07 (2d Cir. 2002); West, 167 F.3d at 779. In situations where sanctions are warranted, district courts have broad discretion in "crafting a proper sanction for spoliation." West, 167 F.3d at 779; see also Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis.") (internal citation omitted).

The selected sanction "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." West, 167 F.3d at 779; see also Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 162 (2d Cir. 2012) ("If these elements are established, a district court may, at its discretion, grant an adverse inference jury instruction insofar as such a sanction would 'serve [ ][the] threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation.'") (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d Cir. 2001)).

"[A] party seeking an adverse inference instruction based on the destruction of

evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp., 306 F.3d at 107.  An adverse inference sanction is "an extreme sanction and should not be imposed lightly." Treppel v. Biovail Corp., 249 F.R.D. 111, 120 (S.D.N.Y. 2008); see also Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 219 (S.D.N.Y. 2003) ("Zubulake IV") ("In practice, an adverse inference instruction often ends litigation–it is too difficult a hurdle for the spoliator to overcome.").  I will assume that at least some of the seized documents would have been relevant to plaintiffs' case,[1] but will address the other elements in turn.

### A. Duty to Preserve

A party seeking sanctions based on the spoliation of evidence must first show "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." Residential Funding Corp., 306 F.3d at 107.  A duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd., 247 F.3d at 436.  "When a party may be deemed to be on notice is a function of the variable chronologies along

---

[1] For purposes of this element, relevance "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." Residental Funding Corp., 306 F.3d at 108–09.  The moving party "must show through extrinsic evidence that the destroyed evidence would have been favorable to its case." Curcio v. Roosevelt Union Free Sch. Dist., 283 F.R.D. 102, 112 (E.D.N.Y. 2012); see also Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J., 601 F. Supp. 2d 566, 570 (S.D.N.Y. 2009) ("For the purpose of spoliation, 'relevant' means that the evidence must be of the sort that a reasonable jury could find harmful to the spoliator's case.").

which issues develop in a law suit." Abramowitz v. Intra–Boro Acres Inc., 98 CV 4139, 1999 WL 1288942, at *3 (E.D.N.Y. Nov. 16, 1999); see also Zubulake IV, 220 F.R.D. at 217 ("While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.").

Here, defendants did not destroy their business records; rather, Farmland seized the documents by court order in August 2013. Plaintiffs had commenced the instant FLSA action approximately four months earlier, in April 2013. Defendants have represented that Farmland seized their books and records within twenty-four hours of the court order, and that they did not have an opportunity to copy or electronically back up their files. (Tr. at 27-28.) Plaintiffs have cited no cases presenting a comparable situation, and the court's research uncovered none. Under the specific circumstances of this case, I find that defendants did not have an obligation to copy their books and records before complying with the court order.

B. Culpable State of Mind

"Even where the preservation obligation has been breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind." In re WRT Energy Secs. Litig., 246 F.R.D. 185, 195 (S.D.N.Y. 2007). On the issue of culpability, the Second Circuit has determined that courts must conduct a "case-by-case approach to the failure to produce relevant evidence" since "[s]uch failures occur 'along a continuum of fault–ranging from innocence through the degrees of negligence to intentionally.'" Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999) (quoting Welsh v. United States, 844 F.2d 1239,

1246 (6th Cir. 1988)). In this Circuit, "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.'" Residential Funding Corp., 306 F.3d at 108 (quoting Byrnie, 243 F.3d at 109).

Again, in this case defendants did not destroy the evidence; rather, they turned it over to Farmland under a court order. Defendants knew, or should have known, that their business records would be likely to lead to the discovery of relevant information in plaintiffs' case; however, there is no suggestion that they acted with any intent or knowledge that the records would be unavailable to plaintiffs in discovery.[2] Accordingly, even if defendants had a

---

[2] It bears noting that, where a defendant failed to track its employees' hours or maintain proper records, "it is well-established that the [plaintiff] may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA." Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 67 (2d Cir. 1997).

> [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

(continued...)

duty to copy or otherwise preserve the records before they were seized, I find no evidence that defendants had the requisite culpable state of mind.

In sum, spoliation sanctions are not warranted in these circumstances. Plaintiffs' motion is therefore denied.

SO ORDERED.

Dated: Brooklyn, New York
April 6, 2015

$$\underline{\qquad /s/ \qquad}$$
ROBERT M. LEVY
United States Magistrate Judge

---

²(...continued)
Id. at 66–67 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687–88 (1946)). Furthermore, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records." Anderson, 328 U.S. at 688.